# Respublica *against* James Le Caze, Michael Mallet and John Ross.

Court will not grant a new trial, because the jury have exceeded legal interest in the measure of damages, for delaying the payment of money; unless it be excessive. Admiralty has no jurisdiction in the case of "legal wreck." Admiralty may take a stipulation to perform a decree; and a writing, tho' void as a stipulation, may be good as a contract; on which, the sum being certain, debt will lie.

AN action of debt was brought by way of information, by the attorney general, against the defendants, for 4000l. sterling money of Great Britain, of the value of 6666l. 13s. 8d. lawful money of Pennsylvania, in the debet and detinet, upon a writing signed by the defendant and taken in the court of admiralty of Pennsylvania, in the nature of a caution or stipulation, dated 4th November 1783.

The information stated the whole case, and the papers recited therein, except the libel, which was stated very generally from the admiralty proceeding.

It appeared on the trial that 5285 French crowns, and 1580 Spanish pieces of eight, had been shipped in Philadelphia, by one captain Ourree, on board the brigantine Count Durant, captain Forenay, on account of Lewis Lanoix of Bordeaux. The vessel was cast away in the bay of Delaware (within a mile of Lewistown) and the money taken out of her in a boat by the captain. It was brought to Lewistown, and from thence to Philadelphia. Forenay applied to the admiralty court of Pennsylvania to receive the cash, and filed his libel for salvage. Le Caze and Mallet applied by petition to that court to receive the money as correspondents of Lanoix, and offered therein to give caution for the amount, deducting the salvage and expences. A stipulation was given accordingly by Le Caze and Mallet with John Ross as surety, under the order of the judge, conditioned to pay the money to Lanoix or the true owner, and indemnify the judge and officers of the court, under the penalty of 4000l. sterling.

The defendants pleaded payment and *nil debent*. The attorney general replied, *non solverunt;* and the issues came on to be tried in September term last, by a special jury of merchants, *when a verdict was found for the commonwealth for 3768l. 9s. 7d.                    [*56

Seven reasons were then filed in arrest of judgment, and also a motion for a new trial; and the same were argued at great length the last July term by Messrs. Randolph, Lewis, Ingersol, Moyland and Mifflin for the defendants, and by the attorney general, Messrs. Sergeant, Coxe and Du Ponceau for the commonwealth.

The reasons in arrest of judgment, were—

1. It does not appear by the declaration, that the subject

[Respublica *v.* Le Caze et al.]

matter of the admiralty suit, therein mentioned, was within admiralty jurisdiction.

2. The evidence and proceedings in the admiralty shew, that the subject matter was properly and exclusively cognizable in a common law court.

3. The stipulation was such a writing, as the admiralty had no jurisdiction to take, and therefore was void in itself.

4. Debt will not lie on it.

5. It is not sufficiently stated that the silver coin was, or is, the property of Lewis Lanoix.

6. If the suit was of mere admiralty jurisdiction and exclusive, it belongs to them to determine it.

7. The admiralty had no jurisdiction, the silver coin being in the custody of captain Forenay.

The motion for the new trial, was grounded on this, that the verdict was against evidence, in finding a larger sum than was really due.

On the 1st reason in arrest of judgment, it was insisted by the defendant's counsel, that there being no averment in the declaration, that the suit was of admiralty jurisdiction, the same is defective.    Every thing of the substance of the action must be included in the declaration. 4 Bac. Abr. 6, 7.    The essence of the action is that without which the court could not have grounds to give their judgment.    Ib. 8.    Though it need not be more certain than the nature of the thing admits of.    Ib. 17.

The admiralty jurisdiction is conversant merely in maritime cases; and where the contract arises part at sea and part on land, the common law courts have the jurisdiction.    The court of admiralty is a limited and particular jurisdiction. 3 Blackst. Com. 106.    Admiralty is considered of inferior jurisdiction, being bounded and circumscribed by certain laws and stated rules, and is subject to the control of the temporal courts. 1 Bac. 558.    In cases of courts of limited and particular jurisdiction, holding plea of causes without their jurisdiction, defendant is *not precluded by pleading in chief from taking advantage of the want of jurisdiction: Aliter of the courts of Westminster.    Carth. 11, 12.    Nothing shall be intended to be within the jurisdiction of an inferior court, but what is expressly averred or alleged to be so.    1 Bac. 562.    2 Lord Raym. 1310.    1 Saund. 74. 1 Vent. 2.    T. Jones 230.    1 Sid. 95.    T. Raym. 63.    Cro. Jac. 95.    1 Term. Rep. 151.    When plaintiff declares, he must shew the jurisdiction of the inferior court.    Bull. 4to. edit. 82.

To this it was answered by the counsel for the commonwealth, that though it is necessary to alledge the substance of the action in the declaration, yet the jurisdiction of the admiralty is not essentially necessary to be averred in the

present instance. The cases cited by the defendant's counsel are such where the judgments of the inferior courts come immediately before the courts of record, and not where by inducement or recital, which materially varies the cases. The ground of the suit, is the agreement of the defendants to pay the money over to the proper owner.

Le Caze and Mallet acted as volunteers in this whole business. They came forward by petition to the court of admiralty, to receive the money for Lanoix, though they did not act either under an express or implied authority from him, and they offered Mr. John Ross as their security, that the money should be paid to the true owner. Here by their own conduct they freely admit and affirm the jurisdiction of the court of admiralty. It may justly be compared to the case in 1 Wils. 319. Debt will lie on a judgment of nonsuit in an inferior court, without alleging that the plaint was levied for a cause of action arising within the jurisdiction of the court of London, because the now plaintiff was brought into court by the defendant, and jurisdiction was not the gist of the suit. But a sentence of the court of admiralty is sufficient to presume a jurisdiction, unless the contrary appear on the face of the proceedings. In applications for prohibitions before sentence in the admiralty, B. R. will examine the whole case, and see the ground of proceedings in that court; but after sentence, the party applying must shew a nullity of jurisdiction on the face of the proceedings. 2 Term Rep. 649. The same law is laid down in another case, by Buller and Ashurst; and it is there said, where jurisdiction is doubtful, it is sufficient to prevent a prohibition. Ib. 475.

But the cases cited are of inferior courts. Now we deny that the admiralty court of Pennsylvania can be called an inferior court. It is true, it was first erected in Pennsylvania, on 8th *March 1780. But it is an old court modelled [*58 anew. It assimilates the admiralty here to that of England. It has jurisdiction of all maritime concerns on the high seas. It is said not to be a court of record, 3 Blacks† Com. 69, though it has power to fine and imprison. 1 Vent. ..

It is arranged with Sir William Blackstone, amongst those courts of justice which are of public and general jurisdiction throughout the realm, in contra-distinction to those of a private and special jurisdiction. In England it is termed the high court of admiralty. Every thing is to be intended in favour of the jurisdiction of courts not of the inferior class. In *narrs* on foreign judgments, jurisdiction is never averred. Vide Dougl. 1. But admit for argument's sake, the declaration to be informal, will not the verdict cure it? Debt will lie for amercement in a court leet, and it must be laid that the party was an inhabitant; yet, if it is not so laid, it is cured by verdict. Bull. 167.

[Respublica *v.* Le Caze et al.]

On the second reason, it was contended by the defendants, that it appeared by the admiralty proceedings, that the coin was considered as wreck. 1st, By the memorial of captain Forenay to the admiralty to receive the money. 2d, By the order of that court. 3d, By the memorial for expenses of salvage. 4th, By the decree of the court thereon. 5th, By petition of Le Caze and Mallet to have the coin delivered to them on their giving security; and 6th, By the decree of the admiralty thereon, and the stipulation entered into.

Now wreck of the sea is of common law jurisdiction by the express words of the statutes, 13 Rich. 2. c. 5, and 15 Rich. 2. c. 3. To give the admiralty jurisdiction, it must be surmised in the libel that the transaction was on the high sea, and the fact must correspond. In the present libel, the place, where the fact of wrecking happened, is not particularly expressed, whether on the sea, a creek, &c. There is a distinction of jurisdiction in the admiralty between the instance court and prize court. Locality designates the jurisdiction of the former; the subject matter designates that of the latter. Courts of common law have jurisdiction of the taking of a ship at sea, except when taken as prize. Dougl. 591, 2, 3, (in *notis.*) The very term "wreck" excludes the jurisdiction of the admiralty. It is frequently used without the additional words "of the sea." 1 Blackst. Com. 290, 1, 2, 3. Here the silver was never out of the possession of the captain. If he or his crew keep possession of the goods, there is no wreck or pretence of it. 5 Co. 107. But if even the captain had been out of possession of the silver, the admiralty would not thereby acquire jurisdiction. The word "wreck" in the admiralty proceedings must be considered in its *legal and technical sense. The word "covenant" in the case in 4 Burr. 2035 was taken in the common and general sense, being used by parties not in court. So it is used in 3 Blackst. 157, as a verbal promise. Captain Forenay did not file his libel for salvage, nor was there any necessity for going into the court of admiralty for the purpose. Vide Parke on Marine Insurance, 149 to 156.

If the captain and seamen do not their utmost to save goods cast on land they lose their wages. Salvage is due by all laws, per Holt Chief Justice, and may be recovered at common law, wherein the trouble, risk, and benefit to the party is to be considered. 1 Ld. Raym. 393. The word strand means the verge of the sea or any river; stranded means run on ground. Wesket, 535.

Prohibition will lie even after sentence in the admiralty, provided the want of jurisdiction appears on the face of their proceedings. 12 Co. 78; 2 Term Rep. 649; 3 Term Rep. 4, 5; 6 Mod. 252.

The following cases were also cited to prove a want of jurisdiction in the admiralty, 3 Blackst. Com. 106; 6 Vin 512, 524, pl. 6; 4 Inst. 144, 2 Inst. 166, 167; 5 Co. 106, 107.

[Respublica *v.* Le Caze et al.]

To this it was answered by the counsel for the commonwealth, that nothing but the court proceedings can impeach the jurisdiction of the admiralty after sentence. It has been already observed that the jurisdiction is to be presumed:—if doubtful, it is a sufficient answer to the objection.

The objections of the defendants to the jurisdiction are three:—1st, That the money is wreck: 2d, That the vessel was stranded: and 3d, That salvage in the present instance is not of admiralty jurisdiction. As to the first objection, we say that the word "wreck" in the proceedings, must be taken in its common and natural sense. Wreck is defined to be "the ruins of a ship which has been stranded or dashed to pieces on a shelf, rock, or lee shore by tempestuous weather." Wesket on Insurance 606. The words "legal wreck" are used by this author. Ibid. And so frequently by Sir William Blackstone, to prevent the mistakes of students. 1 Blackst. 292, 293, &c. Now it appears here by the whole proceedings, that it could not be wreck in the legal sense, for the captain and mariners were saved. And therefore by this circumstance the legal import of the term wreck is controlled.

As to the second objection, stranding means running on the ground whether wet or dry: but it is stated in the libel that the stranding was on the high sea; so that in this particular also the technical meaning of the word wreck is excluded.

*As to the third objection, it is well known that the   [*60 powers of a court of law are very incompetent in the cases of salvage, contribution, and average. The jurisdiction of the admiralty is often by usage, as in the case of part owners not agreeing to freight a vessel, seamen's wages, &c. Molloy lib. 2, c. 6, § 7. Salvage is matter of admiralty jurisdiction, though the goods were attached on land. 1 Salk. 35. Goods may be wrecked at sea, before they are cast on land. 5 Co. 106.ᵇ There is a difference between wreck at sea and wreck of sea. Ib. 107.ᵇ Now wreck and shipwreck are used in the civil law as synonimous terms. Collection of Oleron Laws 113, 349, 350, 352. We contend, therefore, that on a fair construction of the admiralty proceedings, the word "wreck" must be taken in its common and received sense, and as distinguished from "legal wreck," as in the case in 4 Burr. 2035, where the word "covenant" in admiralty proceedings, was considered as an agreement in common parlance, and not necessarily to import a contract under hand and seal.

On the third reason, it was insisted by the defendant's counsel, that the stipulation in the admiralty was merely void, supposing that court to have no jurisdiction of the subject matter. A new court cannot prescribe. Such a tribunal can have no other jurisdiction than is expressed in its erection. 6 Vin. Abr. 497, § 3. It is not a court of record, 1

[Respublica *v.* Le Caze et al.]

Vent. 1; 12 Co. 104; 3 Black. Com. 109. Pleas *coram non judice* are void in themselves. 10 Co. 76ª. 1 Lil. Abr. 508; 3 Burr. 1922. Where courts exercise a jurisdiction which they have not, it is *coram non judice,* and trespass will lie against the officer. 2 Wils. 384. Where it appears that the cause of action was out of the jurisdiction of the inferior court, escape will not lie against the officer, for it is merely void. 1 Rol. Abr. 545, pl. 1. A record of a thing whereof the court where the record is, hath no jurisdiction of the cause, shall be no estoppel of another action. Ib. 863, D. A recognizance taken in the court of admiralty to stand to the order of the court is void. Noy 24. In the present instance the stipulation purports to bind the lands and tenements of the defendants, which it clearly cannot do. Admiralty cannot take recognizance as a court of record may do. 4 Inst. 135. 2 Comy. Dig. c. 8, tit. County, pa. 584. If admiralty has jurisdiction of the original cause it may go on and determine incidents: but where it has not such jurisdiction, though there arises a question in it which is proper for the conuzance of that court, yet that takes not away the power of the common law, 12 Mod. * 144. Comb. 462. S. C. Where it appears on the face of the libel that the spiritual court can have no conuzance, or that the party cited is an inhabitant out of the diocese, then libel is *felo de se,* and prohibition will issue after sentence. Carth. 33. Officer executing process of an inferior court is not justified, if it appears that the cause was out of its jurisdiction. 1 Salk. 201. Ca. sa. issued by an inferior court *extra jurisdictionum,* escape will not lie against sheriff. Bull. 65. No consent can give jurisdiction. Prohibition may be applied for even against the party's own suit. 1 Vez. 470, 471: 2 Rol. 312.

Where the greater part of the owners of a vessel were opposed by the lesser in the ship's going a voyage, and a stipulation was entered into by the major part of the owners to the disagreeing partners under the decree of the admiralty, prohibition has issued. Carth. 36. 1 Show. 13, S. C. Comb. 109. S. C.

[It was admitted that this case is contradicted in 2 Ld. Raym. 1285. 6 Mod. 162. But it was said that the subsequent part of the case of Knight *v.* Berry, that the major part of the owners were not without a remedy at law in such a case, had not been shaken by any authority.]

Bond taken by the ordinary from an administrator to compel him to make distribution of the surplus of the intestate's personal estate among the next of kin, however just and reasonable it would appear, has been held void in the courts of law before the statutes of distribution, 22 and 23 Car. 2. 1 Lev. 233. T. Raym. 498, 499, 225, and in such cases prohibitions have issued from the temporal courts. 1 Wms. 49. 2 Wms. 441, 442, 447, 448. Vid. 1 Vent. 166. 2 Lev. 36.

[Respublica *v.* Le Caze et al.]

But it may be said that the stipulation in the admiralty may be void as such, yet it may operate as a private contract or obligation. We ask, had that court a right to demand such stipulation in the present instance? Was it not done under colour of office, and by a kind of legal coercion? Would not the sanctifying of such a transaction as a contract or agreement, necessarily introduce all the inconveniences of usurped jurisdictions, of which the common laws have been so uniformly jealous?

To this it was answered, that all the authorities cited, went on the ground of the court of admiralty of Pennsylvania, having exceeded their jurisdiction, which cannot be conceded for the reasons above mentioned. The proceedings of the courts of admiralty are often governed by usage, as in the cases of seamen's wages, and part owners taking stipulations on letters of marque and reprisal. Where the custom has been established by usage courts of law will not interfere. 2 Lord Raym. 1286. *In such a case in France the money would have been lodged in the admiralty. [*62 Here was a French captain, agent and owner. They pursued the laws and customs of their own country. The admiralty has jurisdiction to take recognizance or stipulations. 3 Blackst. Com. 108. 1 Ld. Raym. 223, 235. 2 Ld. Raym. 1285. 2 Stra. 890. 2 Sid. 152, 197. 6 Mod. 162. Cro. El. 685. F. N. B. 97. B. They are used in that court as synonimous terms. 3 Black. 108. 2 Ld. Raym. 1285. Admiralty has power to take stipulations in other cases than to compel an appearance. 1 Wils. 103. It is not pretended that they can bind lands by their stipulations as a court of record. Those words in the stipulation in the present case must be rejected as surplusage. In a late case determined in England, a recognizance taken in the admiralty of Nova Scotia, "binding lands and tenements," was sued in the admiralty of England, and on motion for a prohibition, the same was denied. It was resolved, that though it could not be considered as a recognizance to bind lands, yet it operated as a stipulation by the parties to abide the decision of the court of appeals. Henry Blackst. 189, 164.

This case is cited by Buller, J. 3 Term Rep. 270.

The authorities produced to shew, that previous to the statutes of distribution, a bond given by the administrator conditioned to make distribution of the surplus of the intestate's estate was void, went on this ground, that the ordinary by such an obligation violated the clear right of the administrator to such surplus, which was vested in him by the stat. of 31 Edward 3, cap. 11. 1 Wms. 49. 2 Wms. 441, 442, 447, 448. Where the spiritual court took a bond from an administrator *durante minori ætate* with the will annexed, for duly administering and paying debts and legacies, and on demurrer it was objected, that it was a void bond, not warranted by 21

[Respublica *v.* Le Caze et al.]

Hen. 8, c. 5, or at common law; but the court supported it as a bond at common law, being made for a reasonable purpose. 2 Stra. 1137. Vide T. Raym. 78. Cro. El. 544.

So here, it is insisted for the state, that if the stipulation cannot operate as such *stricto jure*, it may as a good contract and binding agreement. Any thing will amount to a contract which expresses the meaning of the parties, though it wants form. Powell on Contracts, 313. Here are all the essentials of a good contract; proper parties and subject matter, consent, right on one hand and obligation on the other. If the property had no owner, the state would be entitled to it: it is the common mode of taking recognizances and stipulations to the commonwealth. If the judge of the admiralty did not act strictly and literally as such, he is to be considered as agent for the captain; and he did *precisely what the captain *ex æquo et bono*, ought to have done for the true owner.

*63] 

On the fourth reason in arrest of judgment, it was contended by the defendant's counsel, that the stipulation could not support an action of debt. It lies on simple contracts, specialties or matters of record. 1 Espin. 182. *Indebitatus Assumpsit* will lie in no case but where debt lies. 1 Salk. 23. 6 Mod. 128. Nothing but a meritorious valuable consideration can raise a debt; and it is not every contract which obliges one to pay money that raises a debt. 6 Mod. 129. 5 Mod. 13. Action lay not on a promissory note before the statute. 1 Salk. 129. Debt will not lie against the acceptor of a bill of exchange. Hard. 486. *Indebitatus Assumpsit* will not lie on a promise by A to pay B 20l. upon his receiving 100l. from C. Skin. 196. Debt lies by the party to the contract his executors or administrators. 2 Comy. Dig. 640. *Indebitatus Assumpsit* will not lie against a father for money lent to his son at his request. Carth. 446. Conuzee of a statute staple cannot bring debt, because no seal of the party to it, but only the king's seal. 2 Bac. 15. 2 Brooks's Abr. 248.

Debt will not lie where there is no *quid pro quo.* Dyer 272. Assumpsit, but not debt, will lie for attorney's fees against A on a retainer to prosecute a suit for J. S. Cro. Car. 107, 193. Sands *v.* Trevilian.

It was insisted that there was no valuable consideration between the commonwealth and the defendants, or any privity between the state and Lanoix.

To this it was answered, that the law must be construed on principle: precedents must be also attended to. (Preface to Douglass's Reports.) The state, in the present instance, is trustee for Lanoix, as in England the king in certain instances is royal trustee for the party. 1 Vez. 453. 4 Burr. 2118. 1 Vern. 439. Though a precedent cannot be produced of an action of debt being brought on a stipulation in

the admiralty, yet it is within the reason and true spirit of the adjudged cases.

Debt lies as well without writing as with writing, but in the former cases the defendant may wage his law. Wood's Instit. 539. It will lie for any determinate sum certain. 3 Blackst. Com. 153, 134. 3 Reeve 58, 62. 2 Comy. Dig. 637, 8. Bull. 71. 2 Bac. 13.

Debt is founded on an express contract, in which the certainty of the sum or duty appears, and in which the plaintiff recovers the sum he goes for, *in numero.* 1 Espin. 182.

Debt lies, though the contract be by way of promise executory upon a good consideration, as upon a promise to pay 100l. * upon the marriage of B; 1 Rol. Ab. 593. 1. 10. [*64 Ib. 594. pl. 14. So though the promise be for the advantage of a stranger; as if one promises to pay so much for the education of the child of another. All. 6. Or if he retains a taylor for 40s. to make a garment for his own daughter; 2 Rol. 77; or to pay for the embroidery of a gown for the servant of his daughter. Cro. El. 880. One promises another 20l. if he will marry S a stranger; debt will lie. 7 Vin. Abr. 330. E. So on a promise to a physician or surgeon if he cures another person. Ib. 1 Rol. 593: l. 15, 17.

So it lies, if the sum be not certain, if it may be ascertained; as upon an agreement to pay the debt of A. 2 Jon. 184. Dub. Cro. El. 758. 2 Comy. Dig. 638.

As to the cases cited *pro def.* Carth. 446. Butcher *v.* Andrews, and Dyer, 272, Pasch. 10 Eliz. the promises there were made on past considerations, for matters done to strangers, and where there was no express promise. If a consideration be executed and is entirely past, and the contract is merely subsequent, it is not a sufficient consideration to ground a contract on, unless something arises between the parties which is meritorious. 1 Powel on Contracts, 348, 350, 7 Vin. Abr. 334. F. pl. 1, 2.

There is a diversity between debt and assumpsit. In assumpsit, it is not necessary that the contract be *eodem instanti,* but it suffices if there be inducement enough to the promise, and though it is precedent it is not material; but in debt, it is requisite that benefit come to the party; otherwise for want of *quid pro quo,* debt lies not. 7 Vin. Abr. 332. pl. 18. Cites Dyer 271.^b. pl. 29. In the present case, the money was delivered to the defendants in consequence of the stipulation and *eodem instanti.* The stipulation will either operate regularly as such, or as an express contract. In either sense, it is a direct acknowledgment of the debt. The suit is not brought on the stipulation alone; the information fully states the whole of the admiralty proceedings. Debt lies on the bye law of a corporation, on account of the presumed consent thereto. Informations in the name of the king are never brought in case, but uniformly in debt.

[Respublica *v.* Le Caze et al.]

As to the case of Sands *v.* Trevilian, Cro. Car. 107, 193, it opposes the whole string of authorities, and is denied to be law in 1 Rol. Ab. 594. pl. 14.   2 Show. 421.   Perhaps the circumstance that the promise was deemed maintenance had considerable weight in the resolution.   The conuzee of a statute staple shall not have debt, because there is a remedy prescribed by the statute.   1 Rol. Ab. 599. M. pl. 2. *Quære,* *Vid. Ib.* pl. 3.  \*2 Comy. Dig. 635.   Astor's Entries 223, 327.   Cro. El. 461, 494, 541, 544.

\*65] 

On the fifth reason, it was said by the defendant's counsel, that it should have been expressly averred that the money was the property of Lewis Lanoix.   The stipulation bound the defendants to perform the trust respecting it, and was intended as an indemnity to the judge and officers of the court of admiralty against Lanoix and all other persons.   The declaration should have stated that Lanoix was the true owner, or if that was not the case, that the defendants did not remit the coin to the true owner.   The true construction of the stipulation, is, that defendants were to be accountable to Lanoix, if the right owner; but if he was not, then to the right owner.   They cited 5 Comy. Dig. 41.   Fitzgib. 61, 63.   Where the promise is in the disjunctive, the declaration should state that the defendant did not perform either the one, or the other act.

To which it was answered, that it was sufficiently laid that the money was the property of Lanoix.   Under this supposition, defendants received the money from the admiralty; and if it was afterwards discovered that it did not belong to him, they should have paid it over to the person truly entitled, upon proper proof.   If Lanoix was not the owner, the commonwealth might recover it for the true owner.

On the sixth reason, it was insisted, that if the admiralty had original jurisdiction, it belonged to them exclusively to determine the present controversy.   Their jurisdiction would extend to incidental matters.   6 Vin. 516. pl. 5.

The maxims are *principale trahit ad se accessorium; accessorium sequitur naturam principalis.*   It is contended for the state, that the admiralty claimed jurisdiction *causa salvagii;* they must then admit that it draws to it stipulations, as necessary incidents.   Recognizances in chancery must be sued in chancery, and so we conclude stipulations in the admiralty must be sued there also, unless cases can be shewn to the contrary.   That stipulations are usually sued in the admiralty, see 2 Lord Raym. 1286.   Carth. 27.   They may be compared to the case of bail bonds, which must be sued in the court where they were taken, because there may exist a variety of circumstances, which the proper court is only competent to inquire into.   3 Burr. 1923.   *Scire facias* upon a recognizance of debt in chancery; defendant pleaded a release, which

[Respublica *v.* Le Caze et al.]

plaintiff denied, and therefore all the record, issue and pro-cess, was sent to B. R. to be tried.   The plaintiff was non-suited, but afterwards brought another *scire facias* in B. *R. and well, for there is the record: *aliter* if the tenor   [*66 of the record only had been sent.

It was answered, that the courts of common law and admi-ralty had in many instances, concurrent jurisdiction, as in the case of seamen's wages, &c.   The suit was not brought in the admiralty here, merely because under the terms of the stipulation.   The judge and officers of that court were to be indemnified against the true owners of the money; and it has been determined that a judge cannot sit where he is con-cerned in the suit.   Hard. 503.

Per Justice Shippen.   It has been said at the bar, that such clauses in stipulations are unusual; but I have known many stipulations taken in this manner, because the judges of the admiralty have in many cases been deemed responsible.   It is not unusual.

Bond in the admiralty to perform its own decree must be sued in common law court.   1 Keb. 88.

A judgment obtained in London, in a cause which by the custom of the city could not be brought in the courts of West-minster, debt will lie on it in B. R. or C. B. 1 Rol. Ab. 600, pl. 8.   A recognizance in chancery may be sued in B. R. though the regular remedy is by *scire facias* in chancery. Cro. El. 608.   Debt lies in C. B. on a judgment on a *scire facias* on a recognizance in B. R. 2 Com. Dig. 634.   Cites Dy. 306. a. in marg.   Debt lies in B. R. on a recognizance of bail in C. B.   So of bail in B. R., it may be sued in C. B. 2 Com. Dig. 635.   So of a judgment in the Marshalsea. Dyer 306.

The reasoning and cases cited on both sides under the second point, apply equally to the seventh reason in arrest of judgment.

Finally it was insisted by the defendants, that the verdict was contrary to evidence.   The jury gave interest for six years and eleven months from the date of the stipulation until the day of giving in their verdict.   To say the least of it, the verdict savors of the most extreme rigor.   The condition of the stipulation was to remit the money to Lanoix, or the true owners.   Now it appeared on the trial, that Lanoix, in the month of April 1784, suspended the payment of the money by his own act, and that no new demand was made, until the writ was sued out against the defendants.   Upon every legal and equitable principle, there ought to have been an abate-ment *pro tanto*, as the engagement of the defendants to do a specific act had been dispensed with, at least for a time, by the party himself.   Brown's Rep. 239.

[Respublica *v.* Le Caze et al.]

*67]     *To this it was answered, that the matter of damages was the peculiar province of the jury; that there could be no reason offered why Le Caze and Mallet, or their security, should not pay interest while they had the use and benefit of so large a sum of money in their hands; that the jury went upon the large principle on which fair engagements are founded, viz. *fides est servanda,* and that here there had been unreasonable delay and vexation.   3 Burr. 1663 to 1670.   If, however, it should appear to the court that the jury had mistaken the damages, by giving interest for too long a period, they would, on the commonwealth's offering to remit it and correct the mistake, accept the offer, and not grant a new trial, under the authority of 2 Term Rep. 214.

The court took time to advise hereupon, and now the Chief Justice, after fully stating the case, gave the opinion of the court, Mr. Justice Bradford declining to take any part in the decision, having argued the matter as attorney general *pro republica.*

The defendants have moved that the judgment on the verdict should be stayed on seven grounds, and have assigned one reason for a new trial.

A motion for a new trial should not be made after a motion in arrest of judgment, unless in cases where the party had no knowledge of the fact at the time of moving in arrest of judgment; for by moving in arrest of judgment you tacitly admit the verdict to be good.  2 Salk. 647.  Bull. 326.  1 Burr. 334.  This is settled by the 32d printed rule of this court, by which it is ordered that no motion for a new trial shall be made after a motion in arrest of judgment.  The present case, therefore, must not be drawn into precedent.

We shall therefore, in the first place, consider the reason offered for a new trial.

It has been said, the verdict was against evidence, because the jury allowed interest on the sum demanded, 2663l. 5s. 2d., for two years, nine months, and nineteen days more than they ought to have allowed, to wit, from the 4th November 1783, the date of the writing on which the action is brought, until the 23d August 1786, when the writ was served; alleging that Lewis Lanoix, for whose use the information is exhibited, had, by his own orders, suspended the remittance of the money to him, during that period.   This allegation is made on the deposition of John Sablonier, who swore that Mr. James Le Caze arrived at Bordeaux in March 1784, and, in a conversation with Lewis Lanoix on the 9th April following, he, Mr. Laniox, agreed to keep the bills of exchange *68]   drawn by Le Caze and Mallet upon Le *Caze and Sons for the sum due, and desired James Le Caze to write to his partner, Mr. Mallet in Philadelphia, not to remit the

[Respublica *v.* Le Caze et al.]

silver, which was done; and it did not appear in evidence that any further demand of it was made until the 23d August 1786, the day on which the writ in this cause was served.

Upon this evidence, the jury may have concluded, that Mr. Lanoix only excused the remittance of the silver during this time, merely as an indulgence to Le Caze and Mallet, and from an expectation that Le Caze and Sons would honour the bills; but being disappointed in this, he ought to have interest for the money, as if no such indulgence had been granted:—that the forbearance was at the instance of James Le Caze, and merely to oblige him, and that Lanoix should not be a loser by it.    The jury, perhaps, should not have allowed interest for the time it would have reasonably taken to have remitted the silver from Philadelphia to Bordeaux for Mr. Lanoix.    Be this as it may, it was a fact properly within the province of the jury:—it was their duty to consider and determine it; and in such case, though the legal interest is usually the measure of damages for delaying payment of money, yet if something more is given, unless it be unreasonable and excessive, the court cannot interfere.

We are therefore of opinion, that a new trial ought not to be granted.

With respect to the reasons in arrest of judgment, they may be comprized under three heads:

1st.  That it does not appear on the record, that the original cause concerning the five casks of silver, was within the jurisdiction of the court of admiralty.

2d.  That if it was not, Anthony Forenay master of the brigantine Count Durant, had no right by the common law to take such a writing as the one now sued, from the defendants.

3d.  That if such a writing could be taken by the common law, yet an action of debt upon it could not be maintained.

As to the first, it is recited in the information by the attorney general, that the libel in the court of admiralty was concerning five barrels of silver, saved from the "wreck" of the brigantine Count Durant, and put into the custody of the marshal, and nothing more, except that "salvage" was decreed to captain Forenay for saving it.

Shipwreck is a matter of revenue.    In a "legal wreck," the goods must come on shore.    *Jetsom, flotsam* and *ligan* are not matters of revenue, and are cognizable in the admiralty; but wreck is determinable by the common law.    1 Blackst. Com. 290.    3 Blackst. Com. 160.    5 Co. 106, 107.    6 Vin. 512. pl. 5.

It is not alleged that the silver was *jetsom, flotsam* or *ligan*, or that the cause arose within the admiralty or maritime juris*diction, or upon the high seas; but if we travel [*69 out of the record, the contrary appeared from the evidence, that the master (Forenay) had signed a bill of lading for it, and that it was never out of his custody.    He carried

it on shore at Lewistown in the Delaware state, and from thence to Philadelphia by land.   1 Vent. 308.   Carth. 423. Dall. 50.   All the proceedings of a court having no jurisdiction, are void; 1 Salk. 201; from which it rather seems, that the court of admiralty had no jurisdiction of the original cause, from any allegation, averment, or any other matter appearing in the information, and that this matter would not warrant a suit in that court.   But as to this point, it is not necessary to give a positive opinion.

The second point is, whether Forenay could take this writing by the common law from the defendants?   Although a court of admiralty cannot take a recognizance, which is a bond or obligation of record, from the defendants, not being a court of record, nor the judge, a judge of record, (6 Vin. Abr. 500. pl. 1.) yet it can take a caution or stipulation, which is usually for appearance or to perform a decree, &c. and is in nature of a recognizance.   It appears that the proceedings in the admiralty were without the participation or knowledge of Lewis Lanoix, and that no coercion was used by the court.   All was voluntary, and not only by consent, but on the application of the defendants.

There is no positive law declaring such a writing void.   It was not given for any thing against good morals, or illegal, but for a meritorious valuable consideration, viz. a sum of money delivered in specie, and for an honest purpose.   If the taking of this writing in the court cannot give it any additional sanction, so on the other hand it cannot destroy or prejudice its legal operation.   Though void as a stipulation, it is good as a contract, as it was determined in the case of Ascue *v.* Hollingsworth, Cro. El. 544; that an instrument which was void as a statute staple, was yet good as an obligation, and the case in 2 Stra. 1137, favors this opinion.   See also Henry Blackstone's Reports in C. B. 164, 189.   3 Term Rep. 270.

For these reasons, we think this transaction may be considered as done out of court, and that it is good and binding on the parties, by the common law.

The next and principal question is, whether the present information in debt upon this writing is maintainable?   It has not been doubted but that special assumpsit would lie in this case, but it has been denied that an action of debt would lie.

A debt is a sum of money due by express agreement, either in writing or by parol, where the quantity is fixed, and does not *depend on future calculation; the non-payment or non-performance is an injury for which an action of debt may be brought.   3 Blackst. Com. 153.   F. N. B. 145. 1 Lil. Abr. 554. C.   2 Bac. Abr. 13.   And it is held in 6 Mod. 129, that a meritorious valuable consideration will raise a debt.   If A gives money to B to buy wares, or any other thing for him, and B does not buy them, debt will lie for the

[Respublica *v.* Le Caze et al.]

money. 7 Vin. Debt. K. pl. 26. Cro. El. 644. For, by the delivery of the money, as it could not be known again, the property is altered, and a duty arises. Where one delivers money to B to be repaid at such a day, debt lies. 1 Rol. Abr. 597, l. 50. Or to be safely kept. Ib. l. 51. Debt lies on any covenant where the sum is reducible to a certainty. Per Windham, J. cites F. N. B. which the court agreed. 2 Keb. 225, pl. 80.

Debts for which an action of debt may be brought at common law, may be classed under four general heads: 1st, Judgments obtained in a court of record on a suit. 2d, Specialties acknowledged to be entered of record, as a recognizance, statutes-merchant or staple, or such like. 3d, Specialties indented or not indented. 4th, Contracts without specialties, either express or implied.

The present action comes under the last head, and is founded on an express contract in writing, whereby, in consideration of five barrels of silver coin delivered by Anthony Forenay, by the advice of the court of admiralty, to the defendants, they promise and engage to remit them to Lewis Lanoix at Bordeaux, or to pay to the commonwealth 4000l. sterling for his use. The writing is in the form of a recognizance taken as a stipulation in the admiralty, but deriving no advantage or prejudice therefrom. It is a legal, fair and honest contract, grounded upon a meritorious and valuable consideration; and although Mr. John Ross is only a surety, yet, unless he had entered into the writing, the contract might not have been made. He has become a party in it, and is responsible for the performance equally with the other defendants. The sum demanded is fixed and certain; there was a duty certain, which has not been performed, for which an action of debt lies; and although perhaps an action of special assumpsit might be preferred, yet we conceive debt is maintainable. The commonwealth must be considered as a trustee for Lewis Lanoix, under the authorities of 1 Vern. 439. 1 Vez. 453. 4 Burr. 2118. The verdict has been taken in the manner long practised in Pennsylvania, though peculiar to it, and in consequence of an act of assembly.

Upon the whole, the court unanimously agree, that the judgment be entered for the commonwealth.

*A writ of error was brought hereupon in the High Court of Errors and Appeals, and afterwards in July [*71 term 1793 the judgment was affirmed on argument.

Cited in 103 Pa., 571, S. C., 15 W. N. C., 76, in support of the decision that a common law action may be maintained upon a bond filed in a foreign attachment suit and conditioned for the payment of the debt, interest and costs, although void as a statutory obligation for want of proper acknowledgment under the act.