Haywood, Chancellor.
— The facts of this case are as follows: The ancestor of the complainants being in possession of 2,500 acres of land, which they claimed through several channels, under Robert King, the grantee; and, being doubtful of the title which they had to the same, were endeavoring to get a judgment against King, after his death, which should be sufficient to sell the land, and to vest a good title in the purchaser. Southerland and Mc’Campbell, having, a judgment of Terry against King, upon which execution had been taken out more than twelve months after the judgment, issued a scire facias against the heirs of King, there being no executor or administrator; and upon such scire facias, there was an award of execution against the heirs. ' In 1816 they agreed to sell it to the plaintiffs, appointed Mr. Lane their agent for that purpose, representing to him, which he represented to the plaintiffs, that this judgment was properly revived ; that the execution upon it was a valid execution, and would pass the title to the purchasers under it. Upon these representations the plaintiffs purchased. The lands were sold, the plaintiffs purchased them ; and they now say that the revived judgment, as it is called, passing over the executor and proceeding against the heirs only, was void, and' that any sale under it was also void; and that they, having paid their money under a mistake, into which they were led by the misstatements made on the part of the defendant, should be relieved against the contract thus unfairly drawn from them; that they purchased under the belief that the judgment and execution was valid, and that the sale under them would be a valid sale, is manifest; that they relied upon the sale made by the defendant is equally so, for the record *372 of the revival was not shown to them, and that they should be relieved to the amount of the loss they have suffered, if it be really true that the judgment of revival is void. The execution is returned satisfied; and in case of relief, they should convey to the defendants the lands which they purchased under it, and be prohibited from using any advantages acquired by their possession, in the mean time, under their former titles, to the prejudice of the defendants. The question, then, to be decided is, whether the judgment and execution, the benefit whereof the defendants sold to the plaintiffs, were really void, and of no effect or not ?
I will consider, in the first place, whether this execution, obtained against the heir without a previous judgment against the executor, be a void execution, and whether such judgment against the heir be a void judgment. And, secondly, if it be a void judgment, whether a sale under it be a void sale.
In order to discover whether the judgment obtained on the scire facias against the heir be a void judgment or not, it will be first considered whether such judgment would have been void before the Act of 1784, ch. 11. Secondly, whether it is made so by the Act of 1784, chap. 11. Thirdly, what effect is produced by the death of the debtor, without an executor or administrator.
First, by the law, as it stood in 1782, before and at the time when the act of Parliament was passed for subjecting lands in the plantations to be sold b ¶ fieri facias, a judgment rendered against the testator or intestate in his lifetime was a lien upon his lands, and this lien had the same effect upon the lands as the lien by fieri facias had upon the personalty of the deceased. If the lien attached before the death of the testator, as it did, if the fieri facias was dated at a time previous to his death, then it might be executed on the personalty in the hands of the executor: 2 Bac. Ab. Execution, letter G, § 2; 7 T. 20, 24; 2 Stra. 1081; 8 T. 368; L. Ray. 766; 3 P. W. 399; 2 L. Ray. 850; 1 L. Ray. 655; Cro. Eliz. 181; 2 Ver. 218; 1 L. R. 244; 1 Salk. 319; 3 P. W. 399; Barnes, 268; 1 B. & P. 572; Dy. 76; Cro. Eliz. 174; 12 Mod. 130; 1 Mod. 188; Cro. C. 149, 447, 448; Cro. 171; Cro. J. 451; L. Ray. 695, 808, 850, 1073; 1 T. 361, 729; 5 Mod. 377; 1 Salk. 320; 2 Mod. 310; Burr. 271; 6 Bac. Ab. c. scire facias, § 4, — because the attaching of the execution upon the goods was prior to the title of the executor, the former being by the teste of the execution, the latter by the death of the testator. The lien takes them into the possession of the law for the satisfaction of the execution, so that they do not go into the legal possession of the executor till the execution be satisfied. So in the cáse of a lien upon lands by judgment against the ancestor; that lien commencing by the judgment which preceded the death of the testator, takes them into the possession of the law, so that they do not descend to the heir, and execution might be *373 taken out upon that judgment without a scire facias. 2 Bac. Ab. Execution, letter G, § 2; C. Litt. 103, 290. In such case, the heir, if he he in the actual possession of the lands, is not in possession as heir, for -the descent is prevented by the lien of the judgment, and he is considered as a ¿erre tenant only. 3 Rep. 13, Herbert’s Case. The creditor, by judgment, could only take the one half of the lands for his satisfaction ; whereas if he had not obtained judgment against the ancestor, and could sue the heir upon the bond of his ancestor, he would be entitled, after judgment against the heir, to have the whole lands extended. 3 Bac. Ab. Heir and Ancestor, F. After judgment against the ancestor, the heir could, not be sued for the debt, for the bond which bound the heir was extinguished by the judgment, and upon the judgment itself he could not be sued, for that bound the lands, but not the heir. The creditor thenceforward could only proceed by execution against the lands, which he might take out instanter, or, if he delay to take out for more than a year, he must have leave to do so from the Court, given upon a scire facias ; quiescence for a year raising a presumption that the judgment was paid, the law, therefore, suspended execution of the judgment till that fact could be inquired into. And whenever the execution by fieri facias is suspended as to personals, so also is the lien ; for the lien is only created by the law to prevent an evasion of the execution by an alienation of the property before it is satisfied[1] after the judgment against the ancestor, therefore, no action lay for the creditor against the heir, except the scire facias, to have execution of the judgment already rendered. Ho original action could lie against the heir upon the judgment against his ancestor. The judgment bound the lands, and whenever the elegit issued, it was against all the lands which the ancestor had at the time of the judgment rendered, or at any time afterwards. Any subsequent judgment could not affect this lien. If rendered against the ancestor, the prior judgment overreached it; if against the heir, the lands already bound by judgment against the ancestor was not in his hands to be affected. They had not descended to him, but were in the keeping of the law for satisfaction of the judgment[2] against the ancestor. Permission of the Court to take out execution upon the judgment against the ancestor, *374 even if wrong, cannot affect the judgment itself; nor, indeed, could the award of execution be wrong, if the creditor had either a right to take out execution without such award, or only be entitled to it after permission had for the purpose upon a scire facias. When the Act of 1732 came for giving a, fieri facias against the lands of the debtor, it was a law made for the greater advantage of the creditor, and was not construed to place him in a worse situation than before. His judgment against the debtor, which was before a lien on the lands, remained a lien still, and drew after it all the same consequences as before. That such lien did continue (4 Dall. 450, 452, 454; 3 N. Y. T. 301), and made void sales effected through or under the defendant in the judgment, is unequivocally recognized in the Tennessee Act of 1799, ch. 14, § 2, and the lien itself is acted upon by that law. If the lien continued, the effects and consequences also continued, some of which were, that the lands could not be alienated to the prejudice of the judgment creditor, and that the heir could not be sued upon the judgment, except by scire facias, to have execution founded upon the judgment. Thus the law continued till 1784.
It is next to be inquired whether such judgment was made void by the Act of 1777, ch. 19, or by the Act of 1784, ch. 11; the frame of these Acts directed that execution should first be levied on the personalty,' and if not sufficient, then on the realty. The same principle had been established by the Act of Parliament, which introduced the elegit; 13 Ed. 1 Ch. 18; and has been observed from the time of the Saxon Government; 1 Reeves, 243; by the Act of the 13th of Edw. 1, the creditor was at liberty to take out a fieri facias against the personalty, or an elegit against the whole of the personalty which was to be applied in the first instance, and one half of the realty, which was not to be touched if there was personalty enough ; 2 Bac. Ab. Execution, letter C, § 2; to secure this purpose, with respect to debts to be thereafter recovered against executors, the Act of 1784 was made ; it was not made to clear up doubts or to remove difficulties, with respect to judgments obtained against ancestors in their lifetime, for the law upon that subject was well settled; but it had been a matter of great controversy, even before the Revolution, whether a judgment against the executor could be levied of lands in the hands of the heir. It had been decided in North Carolina in the Superior Court of Halifax, in the time of the Royal Government, that the heir must first be made party, by scire facias, before a fieri facias upon a judgment against the executor could affect him ; Lathberry was one of the parties. The case is more particularly stated in that of Baker and Long in 1 Hay. Rep. It was contended before this decision that lands were personalty for the payment of debts, by the Act of George II., and as personalty could be affected by a fieri facias against the executor. By this decision it was established that they were not personalty, for such purpose, but continued realty as be *375 fore. And in Baker and Long, and Baker- and Ask, the principles established in the former decision were recognized.[1] But still in 1784 it was doubted whether, upon a judgment against executors, the real estate in the hands of the heir was liable to execution upon that judgment. It *376 was said that the land was noi personalty, for so it had been decided a few years before the Revolution ; that the heir and executor were two distinct persons, and that a judgment against the executor did not by any means affect the heir, and that as the law had not yet given any directions upon the subject, it was proper for the Legislature to make provision for the case of a judgment obtained against the executor after the death of the testator. This Act of 1784, ch. 11, had not any view to judgments already obtained against the ancestor in his lifetime ; for why subject the heir by • scire facias upon the judgment against the executor, when the lands of the 'ancestor were already bound by a judgment against the ancestor ?[1] Nor could this provision be made, without taking from the judgment creditor the lien, which he had acquired by his judgment against the ancestor, upon the lands which he left; for if the creditor must sue a scire facias against the heir, after a judgment previously obtained against the executor, then the judgment upon this scire facias must be an award of execution against the lands of the heir, to satisfy the judgment against the executor, not the judgment against the ancestor; and as, by the death of the ancestor, according to this new doctrine, no execution of the judgment against him could ever be obtained, it follows that such judgment, and the lien created by it, became by his death of no force; and between his death and the time of awarding a fieri facias against the heir, upon the judgment against the executor, the real estate might be alienated by the heir, before 'he can get satisfaction of his demand.
Can it be inferred from the preamble of the Act of 1784, or from any other part of the Act, that the Legislature meant to make void a judgment against the ancestor, so far as to take from the creditor the lien which the former laws gave him for the security of his debt; and that the lands, which the former laws appropriated to discharge the execution which issued against the ancestor in his lifetime, should be snatched from the hands of the creditor, by the death of the debtor, and be placed again in a common fund for the satisfaction of all debts generally, instead of his debt particularly ? If entitled to preference, had the ancestor lived, for what reason take away this preference in case of his death ? Had the ancestor given a lien by a mortgage, that lien would have continued, notwithstanding his death; why not, also, the lien acquired by judgment? Suppose th § fieri facias in the hands of the sheriff, in the lifetime of the ancestor, and *377 •both lands and personalty advertised for sale, and before the sale the ancestor died, the sheriff may certainly go on with the sale of the personalty; why not also with the sale of the realty ? For what purpose shall the law be altered, and a distinction established, which can have no other effect than to endanger the debt of the judgment creditor? If the Act of 1784, ch. 11, did not intend the destruction of this lien, then no construction can be proper which inevitably produces that consequence; and then that is an illegal construction which requires the judgment creditor to sue the executor and then the heir, by scire facias upon the judgment against the executor; for if he must do so, his lien is gone which was founded upon the judgment against the ancestor.[1] If he is not bound to do so, then an award against the heir, that the judgment creditor may have execution of the judgment against the ancestor, is not void for not suing the executor in the first instance. The great reason that is used for requiring the judgment creditor to sue the executor in the first place is, that otherwise the creditor might pass over the personal estate, and make the real estate the primary fund, which is repugnant to the principles established by the Act of 1784, ch. 11. If the creditor, by means of his judgment against the ancestor, has gotten that legal advantage, after a long contest, why should it be taken from him, any more than a lien by mortgage ? Why not let the heir pay the debt, and go against the executor for retribution, as well ,as force the creditor to go in the first instance against the executor ? Has not the creditor been put to trouble enough already, that he must begin de novo a new course of controversy, and be put upon an equal, and often times worse, footing than creditors, whose debts were not authenticated by any judicial determination at the death of the ancestor? Why force him to sue the executor, and, in consequence, to give up his preference to other creditors, and to lose satisfaction of his debt, rather than put the heir to the trouble of getting recompense from the executor ? If either one or the other must go against the executor, is it not better to make him go, who 'ought to pay without controversy, and who can go without danger of loss, than him who ought to be paid without being subject to any vexation, and who cannot be forced to resort to the executor without the danger of losing his whole debt ? Who is there that will say the difficulty of following the executor should be thrown upon the creditor rather than the heir ? Yet the argument is, that this difficulty must be thrown upon the creditor; and from this erroneous position is deduced the erroneous consequence, *378 that if the judgment creditor gets execution, that such execution is void. Again, the apprehended consequence will but seldom happen, namely, that the ci*editor will take satisfaction out of the real estate, passing over the personal; for if th & fieri facias issue so as to bear date before the death of the testator, the sheriff will first take the personal estate, and then the realty, as he would have done had the ancestor been alive ; for a slight inconvenience, which can but seldom happen, and for which, when it does happen, the heir has a plain remedy against the executor,[1] shall a great and important rule in law, which fixes the lien of the judgment upon the lands of the ancestor for the wisest purposes, be destroyed upon such imaginations ? Reason, justice, and sound policy declare the contrary. The Act of 1799, ch. 14, § 3, declares the contrary, for unless execution be issued, and was levied on a judgment rendered in twelve months, persons purchasing Iona fide from, through, or under the defendant shall not he affected. Were they affected before this Act after the twelve months? By what law ? By the laws which we have been discussing, that fixed a lien by the judgment on the lands of the defendant, against whom that judgment was pronounced. This lien, ever since the Act of 1799, ch. 14, yet continues as between the creditor and heir, though not as between a creditor and a fair purchaser, after the twelve months are expired. If before the expiration of twelve months there be a purchaser, he is subject to. the lien; how, then, can it be supposed that the heir, who is a mere volunteer, is not bound, but released, by the death of his ancestor? Suppose that the ancestor lives one year after the judgment, and in the mean time, sells to A, that sale is void against the creditor; yet, if the ancestor die at the end of the year, and the lien ceases, the creditor must sue de novo, and can never aver that such sale was to his prejudice, he having no judgment or lien that was prejudiced thereby. And so the sale, which was at first bad, is now good, by the death of the ancestor, and if good, the creditor’s debt is gone forever.
When, by the Act of 1789, ch. 39, § 3, it is declared that the heir shall pay the value of lands alienated, before process sued out against him, does not the Legislature impliedly declare that lands aliened after process sued out against the heir are bound by the lien of the judgment which shall be pronounced against the heir upon that process ? [2] And by what law is *379 that lien established? By the law as it stood before the year 1784, and which by the acts aforesaid, of 1789 and 1799, are recognized as continuing to exist, notwithstanding the Act of 1784, that is, the lien of the judgment by 1799, and the lien from the time of the action commenced *380 against the heir by the Act of 1789 ; then, the lien is not destroyed by. the Act of 1784, ch. 11, and if not, the creditor, by judgment against the ancestor, may proceed against the heir, as he might have done before the Act of 1784, and if so, then his execution against the heir, whether taken without scire facias or upon a scire facias, is not a void execution, but one which the law recognizes and sanctions. The Act of 1789 is amendatory of the Act of 1784, and relates to the same matters that the Act of 1784 did; they are both in pari materia, and are to be taken as one and the same Act. The Act of 1789, ch. 39, contemplates cases where the lien commences by process sued out against the heir. This was the law before the Act of 13 Ed. 1, ch. 18, and has been the law ever since where the heir is sued after the death of the ancestor. Of course it cannot relate to a judgment against the ancestor, if already there was a prior lien by the judgment which prevented the heir from taking by descent as heir. For, if a prior lien by the judgment existed, what need of another lien from the time of .process sued out against the heir ? The Act of 1789, therefore, and that of 1784, relate tobases of debts not. reduced to judgments in the time of the ancestor.
We are next to inquire what effect is produced by the death of the debtor, without leaving any executor or administrator to represent him. Could it even be supposed that, where there was an executor or administrator to be sued, the judgment creditor would be compelled to give up bis lien upon the real estate, and to sue the executor or administrator; yet surely when there is no such executor or administrator whom he could sue, he should be excused from doing so. What! sue a man by description who is .known not to be in existence ? Take out a scire facias against him, and upon two nihils returned get a judgment against the personalty and sell it.[1] Why not sell by the fieri facias upon the judgment against the testator? Will the law allow the creditor to get judgment against one who is not in being and never was ? In what other instance does it the like ? Is not such a consequence far more to be deprecated than that of first proceeding against.the heir upon a scire facias, and an award of execution against him? And shall such a consequence be incurred and the law of liens be broken down to escape the fancied inconvenience of first paying •out of the realty, and of thereby forcing the heir instead of the creditor upon the personalty, when there is at least as much, if not more, justice in throwing that inconvenience upon the heir than upon the judgment creditor ? *381 Shall it he first arbitrarily assumed that the inconvenience shall be borne by the creditor rather than the heir, and then the assumption be supported' by breaking down the old and salutary doctrine of liens to make way for it ? When the judgment creditor shall be forced to begin once more the painful route which he has once before travelled, and he is told you must sue the executor, will he be also told that he must sue the executor, although there be no executor, or that he must become the administrator himself, and pay himself out of the personalty, when, perhaps, he is not able to give security-for the administration, or, if able to give it, had better lose his debt than be involved in the perplexities.belonging to such an administration ? Is it not better to let him proceed against the heir according to the law as it was before 1784, and let him, the heir, take administration and pay himself out of the personal assets, whatever he may expend in satisfying the judgment creditor ? This old law, which prevailed so long and so indisputably, is far more convenient than the new one, suggested to have arisen by construction out of the Act of 1784, ch. 11. And why change it by a new judicial determination of the first impression ? And when, after making the greatest sacrifices, no other end will be attained than that of making the creditor to look first for the personal estate, instead of the heir, for whose benefit it is to be looked for, and who ought, in justice, to look for it, and not the creditor, who, after all his trouble, is to get no more than his just debt. When there is no executor, the creditor ought not to be stopped from proceeding against the heir; for, if he cannot get the primary fund, the personal estate, there is no reason why he should not go to the secondary one, leaving the executor and heir to settle out of what part of the deceased debtor’s estate the debt shall be finally paid. This surely was the spirit of the Act of 1809, ch. 121, § 3, enabling a creditor, who has sued the intestate in his lifetime, although there may be no executor or administrator to proceed by scire facias against the heir. Without the benefit of this law, his action would have abated; the scire facias continues, and preserves it from abating. But when the suit has not been commenced in the lifetime of the intestate, shall not a creditor, who has not sued, and who cannot sue the administrator, because there is no administrator, as well sue him by leading process as that one who has sued the intestate may proceed by scire facias ? A remedial statute ought to be so construed as to bring within the meaning of it a case not specially mentioned in it, if it be within the mischief against which the statute is pro-, vided. Here, the mischief was, that a creditor could not proceed against the heir for want of an executor, and the creditor yvho has not sued is in the same situation. If one is provided for, so is the other, by the spirit and equity of the law; and whatever the law may have been before the Act of 1789, a creditor, ever since that time, who passes over the executor, because there is no executor, and sues the heir, and gets judg *382 ment, must be free from the imputation that his judgment so obtained is a void judgment, or that the execution upon it is a void execution. And this is applicable, both to original actions against the heir, and to scire facias against him upon a judgment against the ancestor. This inference is inevitable, unless it can be made out that there is no lien by the judgment against the ancestor, which is a position directly contradicted by the Act of 1799, ch. 14, § 3, or, it must be shown that, though there be a lien by the judgment till the death of the ancestor, yet that it ceases by his death, — a position not mentioned in any law or case, and inferred only upon grounds which I have endeavored already to show are untenable. It is in every day’s practice to give judgments in evidence in ejectment, where the plaintiffs claim under execution sales, because the deed relates to the lien of the judgment, and is thereby prior to any sale or encumbrance made subsequently to the judgment. See Law of Ex. 9; B. N. P. 104; 3 T. 295; 2 Tidd, K. B. 960; Trials per pais, 191, 207, 209, 240; Hard. 323, 324. This proves the existence of a lien by the judgment; for otherwise, the fieri facias alone would be sufficient authority for the sale by the sheriff, and for purchasing under it. 2 Bl. Rep. 1101; 1 John, c. 155, 224, 225; 12 Viner, Ab. 251; 4 Mod. 52.
And if the practice holds as well in relation to judgments against ancestors as to those against heirs, it is conclusive in favor of the continuance of the lien after the death of the ancestor. Suppose judgment against the executor, in debt upon a judgment against the ancestor, scire facias against the heir, and the award of execution upon it, which judgment would the purchaser produce, that against the executor or that against the ancestor ? It could not be the award of execution upon the scire facias against the heir, for that, in reality, is no judgment, but only the permission of the Court to have execution of a former judgment; and if that be the judgment against the executor, then the judgment against the ancestor is void from the time of his death, and can never be executed, and cannot overreach any sales made after it. But if the lien continues after the death of the ancestor, then execution ought not to be awarded of the judgment against the executor, this being incompatible with the judgment against the ancestor, — the latter binding the lands from the judgment, the former from a period long subsequent thereto. It follows that no such judgment ought to be gotten against the executor, with a .view to the real estate; and judging upon principle, I should say that, in the case before the Court, the award of execution, without any previous proceeding against the personal representatives of the deceased ancestor was not a void, but a valid judgment; but the law has been decided otherwise by a majority of the Supreme Court, in Boyd and Armstrong’s Heirs, 1 Y. 55, and I must submit to the authority of that decision, though I by no means agree with the reasons upon which it is founded. Upon principle also, I am of opinion that *383 a judgment, said to be void, which is given by a court that by law has jurisdiction over the subject adjudicated-on, will support a sale made by virtue of an execution issued from such court on that judgment. 12 Viner’s Ab. 251; Wilson, 80; Mod. 24; 12 Mod. 178, 179; 1 Str. 509. But this point, likewise, has been decided against my opinion, by a majority of the Supreme Court, and I yield to the authority of the decision.[1]
*384 Decree. — The contract to he set aside, the moneys paid to be. refunded, the notes to be delivered up, a conveyance to be made, by the *385 plaintiffs of all the lands which they purchased, and let them he forever enjoined from taking any advantage of the possession which they have had from the day of the purchase to the prejudice of the defendant; and from taking any other advantage whatever from that purchase to which the defendants would not have been subject but for the purchase and let the defendants pay the costs of this suit.

 Okiginax Note. —When a new fieri facias goes after a scire facias, and an award of execution upon it, it binds from its teste, but the elegit, after such award of execution, commands to be extended all the lands of the ancestor which he had on the day of the judgment rendered. And if owe fieri facias against lands is in place of the elegit, it would seem to follow that the fieri facias awarded upon a scire facias will bind the same lands that the elegit would.

 Okigistax Note. — So long as the lien continues and the lands do not descend, but are in custodia ¡egis, and the heir does not hold as heir, what hinders him to plead no assets by descent 1 And this would defeat a scire facias against him founded upon a judgment against the executor, and of course any recovery against him through that channel..

 Original Note. —Those cases established that the lands were not personalty for the purposes of satisfying execution. And it established, likewise, another principle, that lands were conditionally bound by judgment against the executor; that is to say, unless the heir upon the scire facias against him founded upon that judgment could show that the debt ought to. be paid by the executor. Otherwise, for what purpose issue a scire facias ? And why award execution of that judgment against him if, suopte natura, it did not bind the lands descended to him 1 It would be a perfect anomaly to make a man pay a judgment to which he was not a party, was not in any wise bound, and which, as to him, was completely res inter alios acta. But still, this one case did not settle the law. It was pronounced just before the discontinuance of the courts of North Carolina about the years 1773, 1774, which was immediately followed by the war of the Bevolution, and when the courts were again erected under the new government, the question was not entirely settled. The Act of 1784 was made to solve these doubts. It admitted the conditional lien of the judgment rendered against the executor, the necessity of a scire facias against the heir, and for a sentence of the court upon such scire facias that the creditor should have execution of that judgment against the executor out of the lands descended to the heir. And there are one or two circumstances which show decidedly that the Act of 1784 did not mean to meddle with judgments against the testator. Hirst, the process then used to have a judgment against the. testator levied of his chattels in the hands of his executor -was a scire facias against the executor to have execution out of the assets of the testator in his hands to be administered. This scire facias lay at the common law; it was not introduced like the scire facias by the statute of Westminster, where the judgment had lain dormant for a year and a day. 5 C. D. pleader, scire facias, 3 L. 1; 1 Saund. 219; Dy. 222. And where the creditor sues the executor in an action of debt upon judgment against the testator suggesting a devastavit he must allege in his declaration that the judgment against the testator had been revived upon a scire facias against the executor, which could not be an indispensable allegation, if judgment against the executor, in an action of debt founded upon a judgment against the testator, would have answered the same purpose.
The inference is, that such action of debt upon such judgment may not lie against the executor, but the scire facias only; and if so, may not be any of the actions contemplated by 17S4, ch. 11, upon which judgment may be rendered against the executor after the death of the testator. Upon the scire facias certainly there could not be a judgment against the executor, as the Act of 1784 requires, but only the award of execution or permission to the creditor to take out execution of the judgment against the testator; and then this is not one of the judgments against the executor upon which a scire facias may issue against the heir, by the Act of 1784, but the action there meant, upon which such judgment may be rendered against the executor, as is there intended, is an action not yet passed in remjudicatam. A second circumstance is, that the lands being bound by the judgment against the ancestor, and by that judgment a lien being created which prevents the descent to his heir, he may, to the scire facias upon the judgment against the executor, plead “nothing by descent,” and that being a true plea, would bar the scire facias of the creditor, founded upon the judgment against the executor; and, therefore, the remedy hy scire facias against the heir, provided by the Act of 1784, was adapted only to the case where the lands were not arrested, in their descent to the heir, by a judgment against the ancestor.

 OmeiNAn Note. —Suppose A, a creditor, get judgment against the executor, a scire facias against the heir, and an award of the Court that he shall have execution against the heir of the lands descended to him, will not the judgment of the creditor be overreached by the prior judgment and lien of another creditor, obtained against the ancestor in his lifetime ? And will not such scire facias and award of execution obtained by A, be wholly illusory t And if useless as to the creditor, is it not equally so to the heir, who, after the award of execution upon the scire facias of A, will, with respect to the creditor by judgment against the ancestor, be bound and liable precisely as before.

 Okiginai. Note. — If there be a lien by the judgment against the ancestor, which, prevents the descent of the lands to the heir, and he may plead to the scire facias upon the judgment against the executor, no assets descended, and so defeat this scire facias, then the lien makes void the scire facias; and if he cannot plead so, then the lien is gone, so that the lien and the scire facias upon the judgment against the executor are incompatible, and cannot stand together, and one is destroyed by the other, and the .only •question is, which shall give way.

 Original Note. — Ch. C. 74; Hard. 512; 1 Ch. Rep. 156; 2 C. D. Chancery, Heir, 3, p. 3, page 526. The heir cannot, by pleading an executor and assets in his. hands, compel the creditor to sue him in the first instance by the law before 1784, ch. 11; 2 Saund. 7 (4); Plow. 439; 6 Dy. 204-6; 3 Levinz. 189; 2 P. W. 175.

 Original Note. — Before the elegit was introduced, if an ancestor died indebted and his lands descended to his heir, a creditor by specialty, in which the heir was named, might sue the heir and recover against him his debt, to be levied of the whole lands descended, and which were in possession of the heir on the day when the process was sued out against him; 3 Bac. Ab. 30; Plow. 440; 5 Rep. 35; 2 Bl. Rep. 1240; Dy. *379 374; PI. 14, 344; PI. 1, 87 ; PI. 62, 149 ; PI. 80, 225; PI. 3 ; so that the lands were bound, after the judgment, from the date of the process on which such judgment was rendered. This case entirely differs from one where the land is bound by judgment in the lifetime of the ancestor. This law which existed before the elegit, and has continued in England ever since, was evaded, to the prejudice of creditors, by heirs who alienated before process sued out against them. To obviate this injustice, the Act of 3 and 4 of William and Mary, ch. 5, § 5, provided, that heirs should be liable for the value of lands which had descended to them from indebted ancestors, and which they had aliened before process sued out against them. This provision had no relation to judgments against ancestors, but exclusively concerned actions commenced against heirs in the ordinary way after the death of the ancestor, after his lands had descended to the heir. Our Act of 1789, ch. 39, was copied from the 3 and 4 William and Mary, ch. 5, § 5, and probably meant to obviate the.same mischiefs which that did, and to provide, that in case of actions against heirs, the creditor should not be disappointed by alienation of the lands by the heir before the commencement of such action against him; but whether they meant this, or alienation before the teste of the scire facias against the heir, founded upon a judgment against the executor, in either case, they meant that the lands were subject to a lien after judgment against the heir, which could not be, if the law with respect to liens was changed and abolished by the Act of 1784, ch. 11. It would rather seem, from the law of 1789, oh. 39, that the Legislature which passed it, understood the Act of 1784, ch. 11, was made only for such cases where the creditor, of his own accord, first sues the executor, and did not mean to compel creditors in all cases first to sue the executors. This liberty creditors had before the year 1784; Bro. assets by descent, 33; Plow. 43, C.; Dyer, 204, C.; 3 Lev. 189; and the drawers and passers of the Act of 1789, ch. 39, seem to have supposed that the same liberty existed in 1789, and that an action, founded upon an original claim of the creditor against the ancestor, could still be brought against the heir, in the first instance, without previously suing the executor. The Legislature could not have meant by the term, “ process sued out against the heir,” a scire facias upon a judgment against the ancestor, for the scire facias is not against him as heir, but as occupier of the lands which are liable to the judgment; nor in such case could he be liable, as heir, to pay the debt of his ancestor, in regard to any lands descended to him; nor could he alien before process sued out against him, so as to defeat the creditor, for the judgment against the ancestor rendered them unalienable as against the judgment creditor. The Act of 1789, then, could only have embraced actions at the common law against the heir, as heir, or the scire facias directed by the Act of 1784, ch. 11; and by the Act of 1784, ch. 11, he was not bound only from the time of the scire facias upon the judgment against the executor, but the lands were bound by the conditional judgment against the executor, unless upon the scire facias the heir could show good cause to the contrary. The strong probability is, that the Act of 1789,,ch. 39, was intended to apply, as the Act of 3 and 4 William and Mary did, to actions first instituted against heirs at law; but as our courts have decided that it ap. plied to the scire facias upon the judgment against the executor, and this is the commencement of the action against the heir, or the suing out of process against him, which the Act contemplated, we must now conform to that exposition; and it by no means either forces or leads to the conclusion that there can be no scire facias at this day upon a judgment against the ancestor.

 Original Note. — I-Iow is it possible to reconcile this opinion with that in 3 Haywood, 305, where it was decided that heirs and devisees could not he proceeded against by description, but must be specially named in the leading process against them ? And that, too, in opposition to the case of Seawell and Jones, decided at Clarksville, which it overruled; it is difficult to conceive, unless for some reason which governs the law, how executors may be sued by description when heirs cannot; though by the rules of the common law, there is no difference, as both may bo sued by description. 2 Saund. 6.

 Original Note. — In addition to note (2) p. 378 it may be barely remarked that, by construing the Act of 1789, ch. 39, § 3, to he confined to the scire facias upon judgment against the executor, when it uses the terms “ action commenced or process sued out against him,” and not to comprehend, likewise, actions originally brought against the heir, the same which are spoken of in the Act of 3 and 4 of William and Mary, ch. 5, tj 5, that undesignedly, no doubt, the creditor has been divested of very important advantages ho before possessed ; for now he must first sue the executor and get judgment against him before he can take out the scire facias, a considerable time necessarily elapses, and in the interim the heir may alien the lands, and'thereby the creditor may lose his debt forever; whereas, by the old law, the creditor might have bound the lands by the simple act of suing out process against the heir. The Act of 1789, ch. 39, was made for the benefit of creditors, and does not seem to admit properly of such a construction. Here is an instance to show the great danger there is of superseding the ancient rules of law by constructive implication, when the Legislature has not spoken anywhere of their repeal; and is the more repugnant, as, by the growing notions of modern times, all statutes are to be construed by the letter, and are not to be extended by their spirit; for here is a repeal, hot expressed in terms, but rejected by them, and which is, also, at points with the spirit of the Act, which is not adverse to but promotive of the benefit of creditors. And when this repeal is effected we are next called on to repeal, likewise, the law of liens, and to render judgments, when given, of no effect, by giving to defendants, through the extinction of liens, the power of alienating the property which in justice ought to be liable to their satisfaction. 'How contrary the new rule is to good policy and the dictates of common justice is abundantly evinced by the constant efforts which are made in the Legislature, under the pressure of difficulties which it occasions, to return to the ancient course, and to make the heir liable in the first instance. The Act of 1789, ch. 39, and of 1809, ch. 121, are some of the instances which might be recurred to in support of this remark. And if so much mischief has already been done by impli-cative repeals, we should take warning from them not to repeal by implication the ancient law of liens, which, from the earliest periods, has been invariably observed hitherto ; having been found, by the uniform experience of all ages, to be essential and indispensable to the efficacy of j udgments, and to prevent them from being eluded, by the alienation of the defendant, or by other act voluntarily done or suffered, by him, and without which the courts of the country would not bé able to do effectual justice to the suitors. This exposition of the Act of 1789, ch. 39, § 3, was the parent, likewise, of another inconvenience to the creditor. By considering the scire facias upon the judgment against the executor as the process sued out against the heir, from which the lien should be in operation, it transferred the lien from the judgment against the executor to the date of the scire facias upon it, giving to the debtor the liberty of alienation, even after the time of his judgment, which gave him notice of his danger. Instead of restraining alienation, from the first notice given to the heir of a demand by an action commenced against him, it extends the power of alienation, not only after an action commenced against the executor for the purpose of affecting the land by a conditional judgment against the lands, but even to a point of time subsequent to the pronunciation of that judgment. And this Act of 1789, which seems to have intended an extension to anticipate early *384 alienations, has operated the double effect of postponing the lien, and of extinguishing these original actions against the heir which the creditor might formerly have brought, and which are referred to by the same words in the statute of 5 William and Mary, ch. 5, that are copied into the Act of 1789, ch. 39, § 3, and are there made to have a meaning so totally different from the same words in the statute of William and Mary.
The Legislature, in treating of a remedy after a judgment against an executor upon, an action voluntarily brought against him by the creditor, when they passed the Act of 1784, ch. 11, wereobliged to sa.y that a scire facias upon ajudgment against the executor should be the remedy pursued by the creditor, because his original demand, upon which his action against the executor was founded, became merged and extinguished in the judgment against the executor, and could no longer be used in an action against the heir. But the same necessity for using the scire facias did not apply to cases where judgment had not been obtained against the executor, and, therefore, was not intended to apply to them. These latter cases were left untouched by the Act of 1784, and, with respect to them, the creditor was at liberty to proceed by original action against the heir, as he might have done before the Act of 1784. And when the Assembly, in the preamble of the Act of 1784,spoke of the doubts expressed in the preamble, “ whether heirs and devisees should be liable to the payment of debts upon judgments obtained against executors,” they used the utmost precision, and meant exactly what they expressed, and no more. It had no intention to regulate demands not passed into judgments against executors. It left untouched judgments against ancestors, and demands for which executors had not been sued, and for which no judgments had been obtained against them, leaving them to be governed by the laws already in being concerning them. And what were the laws in being concerning them in the year 1784 ? Real estates in the plantations were, by the 5 of Geo. II. ch. 7, passed in the year of our Lord 1732, made liable to all just debts, and were made “ assets for the satisfaction thereof, in like manner as real estates are by the law of England liable to the satisfaction of debts due by bond or other specialty.”. The liability of real estates and the laws of England in relation to it, were made laws in the plantations, and these were the common law; the statute of Westminster the 2, ch. 18 ; the statutes of 3 and 4 William and Mary, ch. 5 ; 3 and 4 William and Mary, ch. 14; 29 Char. II. ch. 3. The alteration effected by the 5 Geo. II. ch. 7, was a sale of the whole lands by fieri facias, instead of an extent and delivery of half to the creditor. The Act of 1784, ch. 11, admitted the liability of devisees, which was only by the statute of the 3 and 4 William and Mary, ch. 14. There was no necessity for the Act of 1789, ch. 39, to make void devises to the prejudice of creditors ; that had already been done by the Act of 3 and 4 William and Mary, ch. 14 ; nor was there any necessity for the Act of 1789, ch. 39, § 3, to subject heirs for the value of lands alienated before actions commenced against them, for that had already been done by the statute of 3 and 4 William and Mary, ch. 5. A're-enactment of these statutes, in the same words in which they were before conceived, ought to have no other effect than had been produced by the laws re-enacted. But by confining them exclusively to writs of scire facias upon judgments against the executor, the actions against heirs, which the statutes regulated and improved, have been entirely abolished. Some judges of North Carolina, of great celebrity never would yield to this exposition of the Acts of 1784 and 17S9, but maintained the contrary; that original actions might still be brought against heirs, and that original attachments would lie against them. One decision of this sort was made by Judge Johnston, at Ncwbern, and may be found in Yol. II. of Haywood’s Reports.
Had it not been for this exposition of our acts of Assembly, there would have been *385 three classes of creditors; that is to say, creditors by judgment against the ancestor; creditors by debts due from the ancestor which had not passed into judgments, and creditors by judgment against his executors. And for those not passed into judgments, either against the executor or ancestor, the creditor might sue the heir in the first instance if he thought proper. And both these classes were under the regulation and government of the law as it stood before and up to the year 1784. The third class of creditors,' those by judgments against executors, would have been under the exclusive regulation of the Act of 1784, ch. 11; theirs being a class of cases not within the provisions of the former laws, and which were produced by the fieri facias under the statute of George II., and for which, if no regulation had been made by the Legislature in 1784, it would have been impossible to know how to proceed, it having been decided before the Revolution, in the case of Lathberry, that a scire facias against the heir was necessary, without deciding what should be its particular form, what the heir should be called upon to show cause against, what defences the heir might make, or in what manner the proceedings upon it should be conducted.
By the exposition aforesaid the last two cases were confounded, and, by a late decision, the case of a judgment against the ancestor is also involved in the same common vortex. The perplexities which have'resulted should serve as beacons to keep us clear for the future of going beyond the words of the Legislature, and of repealing by construction whole branches of the juridical system, when such construction is neither necessary nor in any respect useful.